IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF E J SMITH CONSTRUCTION, COMPANY, LLC, | § § § § § § | |
| Plaintiff/Cross-Respondent, | § § | |
| v. | § § | 5:15-CV-971 RP |
| TRAVELERS CASUALTY & SURETY COMPANY, *et al.*, | § § § | |
| Defendants/Third-Party Plaintiffs/ Counter-Respondents, | § § § | |
| v. | § § | |
| INTERNATIONAL FIDELITY INSURANCE COMPANY, | § § § | |
| Defendant/Third-Party Defendant/ Cross-Claimaint/Counter-Claimant. | § § § | |

## ORDER

Before the Court are the following motions and the responsive pleadings thereto:

1. IFIC's Re-urged Motion to Dismiss Indemnity Claim of BBM and Its Sureties (Dkt. 91);

2. IFIC's Re-urged Opposition[1] to Motion to Add a Fraud Claim of BBM (Dkt. 92);

3. IFIC's Re-urged Opposition to EJ Smith Construction Company's Motion for Leave to Amend (Dkt. 93);

4. Plaintiff's Motion for Leave to Designate Potentially Responsible Third Parties (Dkt. 74); and

5. IFIC's Motion for Leave to File First Amended Counterclaim (Dkt. 79).

---

[1] While IFIC labels two of its filings as "Re-Urged Oppositions" to previously filed motions, the Court treats these filings as motions for reconsideration of the previously entered orders.

On February 24, 2016, the Court held a hearing on all pending motions. After review of the pleadings and the relevant legal authorities, the Court issues the following order.

## I. Background

### A.  Factual Background

This case arises out of the construction of a new medical center at Fort Hood, Texas. In September 2010, the United States Army Corps of Engineers ("USACE") entered in a contract with Defendant Balfour Beatty/McCarthy (hereinafter "Prime Construction Contract"), in which Balfour Beatty/McCarthy agreed to serve as general contractor on the construction project. Balfour Beatty/McCarthy is a joint venture comprised of a partnership between Defendants Balfour Beatty Construction, LLC ("Balfour Beatty"), and McCarthy Building Companies, Inc. ("McCarthy"). Defendants Travelers Casualty & Surety Company, Federal Insurance Company and Liberty Mutual Insurance Company served as Balfour Beatty/McCarthy's sureties and, accordingly, issued bonds guaranteeing that Balfour Beatty/McCarthy would complete the construction of the new medical center, according to the terms of the Prime Construction Contract, and pay its subcontractors and vendors. Balfour Beatty/McCarthy, its partners, and its sureties are hereinafter referred to simply as "BBM." Balfour Beatty/McCarthy's sureties are hereinafter referred to as "BBM's Sureties."

In October 2012, BBM entered into a contract with Vendigm Construction, LLC ("Vendigm") (hereinafter "Original Contract") to build three parking garages at the site of the new medical center. Third-Party Defendant International Fidelity Insurance Company ("IFIC") served as surety for the work performed by Vendigm. In June 2013, after Vendigm defaulted on its obligations under the Original Contract, IFIC entered into a contract with BBM (hereinafter "Takeover Agreement"), in which IFIC agreed to complete performance of Vendigm's obligations under the Original Contract and to be bound by the terms of the Original Contract. The next day, IFIC entered into a contract with Plaintiff EJ Smith Construction Company, LLC ("EJ Smith") (hereinafter "Completion Contract"), in which EJ Smith agreed to complete construction of the

parking garages and to be bound by the terms of the Original Contract, subject to some exceptions included in an addendum. EJ Smith was later terminated from the project and now contends that it has not been paid for materials and services it provided to the project prior to its termination.

### B. Procedural Background

On October 29, 2014, EJ Smith filed its Original Complaint, asserting a single Miller Act claim against BBM. (Orig. Compl., Dkt. 1.) The Miller Act requires some contractors on government construction contracts to post bonds guaranteeing performance of the contract and payment of their subcontractors and vendors. *See* 40 U.S.C. § 3131; *F. D. Rich Co. v. U. S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 121-22 (1974). EJ Smith claims that it was not paid for labor and materials provided to the construction project prior to its termination. Accordingly, EJ Smith seeks damages from BBM in an amount equal to the value of the unpaid labor and materials it claims to have supplied to the bonded construction project.

On December 3, 2014, BBM filed its Third-Party Complaint, asserting an indemnification claim against IFIC. (Third-Party Compl., Dkt. 18.) BBM contends that when IFIC entered into the Takeover Agreement it agreed to be bound by the terms of the Original Contract, including an indemnification provision included therein. Pursuant to that provision, BBM asserts that it is entitled to indemnification and reimbursement from IFIC for any expenses incurred by BBM in paying IFIC's subcontractors and vendors, including any judgment awarded in this action.

On March 9, 2015, IFIC filed its Answer to BBM's Third-Party Complaint, including a Crossclaim against EJ Smith and a Counterclaim against BBM. (IFIC's Answer, Countercl. & Crosscl., Dkt. 33.) In its Counterclaim, IFIC asserts numerous causes of action against BBM, including breach of the Takeover Agreement, and violations of the Federal Acquisition Rules and the Texas Trust Act. In its Crossclaim, IFIC asserts a claim for breach of the Completion Contract against EJ Smith.

Also on March 9, 2015, IFIC filed its Motion to Dismiss Claims of BBM and Sureties. (Mot. Dismiss Claims of BBM & Sureties, Dkt. 32.) In the motion, IFIC argued that BBM's indemnification claim is rendered void and unenforceable by the Texas Anti-Indemnity Statute. On June 25, 2015, Judge Smith entered an order denying IFIC's motion to dismiss and upholding the indemnification provision as enforceable. (Order, Dkt. 52.)

On August 25, 2015, EJ Smith filed its Motion for Leave to File (1) Amended Complaint and (2) Amended Answer to Cross-Claim (Dkt. 59). IFIC opposed the motion on the basis that granting leave to amend would cause undue delay, prejudice IFIC, and ultimately be futile. (IFIC's Opp. to EJ Smith's Mot. Leave Amend, Dkt. 60.) Judge Smith granted the motion. (Order, Dkt. 61.) In its Amended Complaint, EJ Smith, in addition to its original Miller Act claim against BBM, asserts new causes of action against IFIC for breach of contract and quantum meruit. (Plf.'s First. Am. Compl. 7-8, Dkt. 62.)

On September 23, 2015, BBM filed its Motion for Leave to File a First Amended Third-Party Complaint Against IFIC. (Dkt. 64.) By way of the motion, BBM sought leave to add breach of contract and fraudulent inducement claims against IFIC. (Am. Third-Party Compl., Dkt. 72.) While IFIC did not object to the addition of the breach of contract claim, it opposed granting BBM leave to add the fraud claim on the basis that the claim is futile. (IFIC's Opp. to BBM's Mot. Leave Amend, Dkt. 65.) Judge Smith granted the motion. (Order, Dkt. 70.)

On October 22, 2015, IFIC filed its Motion to Recuse (Dkt. 1) under seal, which EJ Smith joined. (Plf.'s Resp. & Joinder to IFIC's Mot. Recuse, Dkt. 74). Judge Smith granted the motion and the case was reassigned to the undersigned. (Order, Dkt. 78.) In light of the recusal and reassignment, the Court allowed the parties to move for reconsideration of any previously entered order.

In response to the Court's invitation, IFIC filed three motions for reconsideration. First, IFIC moved the Court to reconsider the order denying IFIC's motion to dismiss BBM's indemnification claim. (IFIC's Re-Urged Mot. Dismiss BBM's Indemnity Claim, Dkt. 91.) Second,

IFIC moved the Court to reconsider the order granting BBM leave to amend its third-party complaint in order to add a fraud claim against IFIC. (IFIC's Re-Urged Opp. to BBM's Mot. Add Fraud Claim, Dkt. 92.) Third, IFIC moved the Court to reconsider the order granting EJ Smith leave to amend its original complaint to add breach of contract and quantum meruit claims against IFIC. (IFIC's Re-Urged Opp. to EJ Smith's Mot. Leave Amend, Dkt. 93.)

Prior to the case's reassignment, EJ Smith filed a motion seeking to designate potentially responsible third parties under the Texas Proportionate Responsibility Statute. (EJ Smith's Mot. Leave Designate Resp. Third Parties, Dkt. 74.) Shortly after the case was reassigned, IFIC filed a motion for leave to amend its Counterclaim to add a fraud claim against BBM. (IFIC's Mot. Leave. File First. Am. Countercl., Dkt. 79.)

The Court now considers all pending motions.

## II. Legal Standards

### A. Standard for a Motion for Leave to Amend under F.R.C.P. 15(a)

Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Leave to amend "is not automatic." *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996). Rather, it is within a district court's discretion to deny leave to amend if there is "a substantial reason to do so." *Id.* In determining whether there is such a reason, "the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* 314-15 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"It is within [a] district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). An amended pleading is futile if it "would fail to state a claim upon which relief could be granted." *Id.* at 873. "[T]o determine futility, we . . . apply 'the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *Id.*

(quoting *Shane v. Fauver,* 213 F.3d 113,115 (3d Cir. 2000); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1085 (7th Cir. 1997); *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996)).

### B.  Standard for a Motion to Dismiss under F.R.C.P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Federal Rule of Civil Procedure 8 mandates that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, this standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "factual enhancement."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007).  Rather, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.

This standard is guided by two principles.  "First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. Thus, "[a] court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.* at 664. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

6

### III. Discussion

**A.  IFIC's Re-urged Motion to Dismiss Indemnity Claim of BBM and Its Sureties**

BBM seeks indemnification from IFIC pursuant to an indemnification clause (hereinafter "Indemnification Agreement") included in the Original Contract, between BBM and Vendigm, and incorporated by reference into the Takeover Agreement, between BBM and IFIC.[2] (BBM and Sureties' First Am. Third-Party Compl. ¶¶ 30-39, Dkt. 72.) BBM asserts that it "is entitled to indemnification and reimbursement for any expenses incurred by BBM in paying IFIC's sub-subcontractors and vendors, which [include] the claims asserted by EJ Smith in this action." (*Id.* at ¶ 35.) IFIC previously moved the Court to dismiss the indemnification claim. (IFIC's Mot. Dismiss Claims of BBM and Sureties, Dkt. 32.) Judge Smith denied the motion. (Order, Dkt. 52.) IFIC now moves the Court to reconsider. (IFIC's Re-urged Mot. Dismiss Indemnity Claim of BBM and Sureties, Dkt. 91.)

IFIC contends that the Indemnification Agreement is unenforceable under Texas Insurance Code Section 151.102 (hereinafter "the Texas Anti-Indemnity Statute"), which voids any contractual term providing a party indemnification from that party's own negligence. BBM responds that (a) the Texas Anti-Indemnity Statute is inapplicable as the law did not go into effect until after the Prime Construction Contract, between BBM and USACE, was signed and (b) the Indemnification Agreement is enforceable under the common law fair notice requirements, which were controlling prior to the enactment of the Texas Anti-Indemnity Statute.

The Court first addresses whether the Indemnification Agreement is governed by the Texas Anti-Indemnity Statute and finds that the agreement is not. The Court then asks whether the agreement is enforceable under the common law fair notice requirements and finds that it is. The Court then finally asks whether the agreement requires IFIC to indemnify BBM's Sureties in

---

[2] The Indemnification Agreement is found in Paragraph 5.6 of the Original Contract between BBM and Vendigm. (Balfour Beatty / McCarthy Subcontract ¶ 5.6, Dkt. 72-1.) In the Takeover Agreement, IFIC agreed to be bound by "every one of the terms, covenants, conditions of the Original Contract" including the Indemnification Agreement. (Takeover Agreement, Dkt. 72-5.)

addition to BBM. As to the final question, the Court finds that BBM's Sureties' claim for indemnification is premature.

<u>Whether the Indemnification Agreement is Governed by the Texas Anti-Indemnity Statute</u>

In 2011, Texas enacted House Bill 2093, entitled, "An Act relating to the operation and regulation of certain consolidated insurance programs" (hereinafter "H.B. 2093"). 2011 Tex. Gen. Laws Ch. 1292. Section 1 of H.B. 2093, in part, creates the Texas Anti-Indemnity Statute and codifies it at Section 151.102 of the Texas Insurance Code. *Id.* § 1. In Section 4, H.B. 2093 states that the Act is to take effect on January 1, 2012. *Id.* § 4. In Section 3(b), H.B. 2093 clarifies the meaning of its effective date as follows:

> The changes in law made by this Act apply only to an original construction contract with an owner of an improvement or contemplated improvement that is entered into on or after the effective date of this Act. If an original construction contract with an owner of an improvement or contemplated improvement is entered into on or after the effective date of this Act, the changes in law made by this Act apply to a related subcontract, purchase order contract, personal property lease agreement, and insurance policy. If an original construction contract with an owner of an improvement or contemplated improvement is entered into before the effective date of this Act, that original construction contract and a related subcontract, purchase order contract, personal property lease agreement, and insurance policy are governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.

*Id.* § 3(b).

The "original construction contract" in the present case is the Prime Construction Contract between the USACE (the owner of the contemplated improvement) and BBM. It is undisputed that BBM entered into the Prime Construction Contract with the USACE on September 10, 2010, well before H.B. 2093 took effect. (BBM and Sureties' First Am. Third-Party Compl. ¶ 6, Dkt. 72; IFIC's Orig. Answer to Third-Party Plfs.' Am. Compl. ¶ 6, Dkt. 86.) Accordingly, pursuant to Section 3(b) of H.B. 2093, the Texas Anti-Indemnity Statute does not apply to the Prime Construction Contract or to any related subcontracts. Because the Original Contract and the Takeover Agreement are both subcontracts subordinate to the Prime

Construction Contract, neither is governed by the Texas Anti-Indemnity Statute. Thus, the Indemnification Agreement included in the Original Contract, between BBM and Vendigm, and incorporated by reference into the Takeover Agreement, between BBM and IFIC, is not governed by the Texas Anti-Indemnity Statute.

IFIC asserts that the language contained in Section 3(b) of H.B. 2093 comes from an "unenacted note[] from [a] draft version[] of the bill" and maintains the Court should disregard "extraneous texts" in favor of "the controlling statutory text." (IFIC's Reply 5, Dkt. 98.) Contrary to IFIC's assertion, Section 3(b) of H.B. 2093, while uncodified, is still binding law. The language of Section 3(b) does not come from a draft version of the bill, but rather is found in the final, enrolled version, as signed by the governor. Uncodified session law is law nonetheless. *See Al-Yahnai Fountain Hawkins v. State*, No. 11-04-00278-CR, 2005 WL 2156981, at *2 (Tex. App.--Eastland Sept. 8, 2005) ("Other than the publication of the session laws, Texas does not publish an official set of its laws. For this reason, most Texas practitioners use publications prepared by Vernon's as their source of the laws of Texas. Vernon's routinely omits the enacting language in its publication of the State's statutes. The fact that Vernon's does not transcribe the enacting language is of no consequence. As long as the official session law was enacted properly, the statute is valid."); *see also Ward Cnty. Irrigation Dist. No. 1 v. Red Bluff Water Power Control Dist.*, 170 S.W.3d 696, 697-98 (Tex. App.—El Paso 2005, no pet.) (interpreting and enforcing uncodified session law); *Tijerina v. Tijerina*, No. 01-96-01046-CV, 1997 WL 760535, at *1 (Tex. App.—Houston [1st Dist.] Dec. 11, 1997) (same).

IFIC also notes that Judge Smith has twice previously held that the Texas Anti-Indemnity Statute applies to the subcontracts at issue here, both in his previous order[3] in this case and in

---

[3] Judge Smith's original order finds:
> Section 5.6 of the Original Contract is in violation of the Texas statute and is, therefore, unenforceable as against public policy. However, in the Amendment to the Contract between Fidelity and EJ Smith the parties specifically refer to the Section 5.6 and amend it to remove the objectionable language. There is, therefore, no basis for a claim under § 151.102.

another order in a related case. However, in neither order did Judge Smith explicitly address the question of whether the statute applies to construction projects initiated prior to the statute taking effect, nor did Judge Smith consider the uncodified text of Section 3(b) of H.B. 2093 which explains that the Texas Anti-Indemnity Statute only applies if the underlying construction contract was entered into after the law took effect. (*See* Order, Dkt. 52; *United States ex rel. Liberty Steel Erectors, Inc. v. Balfour Beatty Construction, et al.*, No. 6:13-CV-00385-WSS (Dkt. 265).) Thus, nothing in Judge Smith's previous orders persuade the Court that the Texas Anti-Indemnity Statute is applicable.

The Court concludes that the Texas Anti-Indemnity Statute does not govern the Indemnification Agreement. Rather, the Indemnification Agreement is subject to the common law fair notice requirements which were controlling prior to the Texas Anti-Indemnity Statute's enactment. Accordingly, the Court now asks whether the Indemnification Agreement is enforceable under the common law fair notice requirements.

<u>Whether the Indemnification Agreement is Enforceable under the</u>
<u>Common Law Fair Notice Requirements</u>

Under Section 3(b) of H.B. 2093, the Indemnification Agreement is governed by the law that was in effect immediately prior to the effective date of the Texas Anti-Indemnity Statute. Accordingly, the Indemnification Agreement is governed by the common law fair notice requirements, which limited the enforceability of indemnification agreements prior to the Texas Anti-Indemnity Statute. The Texas Supreme Court explains the fair notice requirements as follows:

> Because indemnification of a party for its own negligence is an extraordinary shifting of risk, this Court has developed fair notice requirements which apply to these types of agreements. The fair notice requirements include the express negligence doctrine and the conspicuousness requirement. The express negligence doctrine states that

---

(Order 5, Dkt. 52.) IFIC disputes this conclusion, arguing that the language of the agreement between IFIC and EJ Smith is immaterial to the terms of the agreement between BBM and IFIC. Having found that Texas Anti-Indemnity Statute is inapplicable, the Court does not reach this dispute.

> a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract. The conspicuous requirement mandates that something must appear on the face of the contract to attract the attention of a reasonable person when he looks at it.

*Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (internal citations and quotation marks omitted). However, "[t]he fair notice requirements are not applicable when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement." *Id.* at 509 n.2; *see also Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) ("[I]f both contracting parties have actual knowledge of the plan's terms, an agreement can be enforced even if the fair notice requirements were not satisfied.").

BBM contends that IFIC had actual knowledge of the Indemnification Agreement, as evidenced by IFIC's reference to the Indemnification Agreement in the Completion Contract it entered into with EJ Smith. In the Completion Contract, EJ Smith agreed to perform and complete Vendigm's contractual responsibilities to BBM pursuant to the terms of the Original Contract, which includes the original Indemnification Agreement. However, in drafting the Completion Contract, IFIC specifically modified the language of the Indemnification Agreement as it would apply to EJ Smith. (Request for Modifications to the Original Contract between "Former Contractor" and BBM, at 2-3, Completion Contract, at 21-22, Dkt. 72-6.) IFIC could not have acknowledged and amended the language of the Indemnification Agreement, if it did not have actual notice of the Indemnification Agreement's existence. IFIC does not dispute this contention. Accordingly, the Court concludes that IFIC had actual knowledge of the Indemnification Agreement and therefore is not subject to the common law fair notice requirements.

However, even if IFIC did not have actual knowledge of the Indemnification Agreement, the agreement is nonetheless enforceable under the common law fair notice requirements. First, the Indemnification Agreement explicitly states that IFIC will indemnify BBM for any loss "regardless of whether it is caused in part by the acts, omissions, or negligence of a party

11

indemnified hereunder." (Balfour Beatty / McCarthy Subcontract ¶ 5.6, Dkt. 72-1.) Accordingly, the Indemnification Agreement complies with the terms of the express negligence doctrine because BBM's intent to be indemnified for losses incurred consequent to its own negligence is expressed "in specific terms within the four corners of the contract." *Dresser Indus.,* 853 S.W.2d at 508. Second, the Indemnification Agreement appears under a separate heading in bold, entitled "ARTICLE 5 INSURANCE AND INDEMNITY" and the entirety of Section 5.6 is capitalized, distinguishing it from the rest of the contract. Accordingly, the provision complies with the conspicuousness requirement. *See id.* at 511 ("When a reasonable person against whom a clause is to operate ought to have noticed it, the clause is conspicuous. For example, language in capital headings [and] language in contrasting type . . . is conspicuous."). Thus, the Court concludes that the Indemnification Agreement is enforceable.

Whether the Indemnification Agreement Extends to BBM's Sureties

Having found that the Indemnification Agreement is enforceable, the only remaining question is whether the agreement requires IFIC to indemnify not only BBM but also BBM's Sureties. The Court concludes that it does not. The scope of the indemnification agreement is limited to BBM itself.[4]

IFIC contends that it has no obligation to indemnify BBM's Sureties because the sureties are not explicitly named in the Indemnification Agreement. Texas law bars extending an indemnification agreement to parties not expressly named. *See Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983) ("We are precluded from expanding the scope of [an indemnification agreement] beyond that stated in the contract based solely upon what this Court may perceive to be the improperly expressed intentions of the parties."); *Melvin Green, Inc. v. Questor Drilling Corp.*, 946 S.W.2d 907, 910 (Tex. App.—Amarillo 1997, no writ) ("We are precluded from extending an indemnity paragraph to parties not specifically

---

[4] Whereas elsewhere the Court uses "BBM" to refer to Balfour Beatty / McCarthy, its partners, and its sureties, for the purposes of this discussion the Court uses "BBM" to refer only to Balfour Beatty / McCarthy and its partners.

12

designated therein."). BBM's Sureties do not dispute that they are not explicitly named in the Indemnification Agreement. Rather, they argue that under the principle of equitable subrogation, a surety may assert the contractual indemnification rights of its principal. (BBM's Resp. ¶ 25, Dkt. 94.) IFIC argues, in turn, that that BBM's Sureties' equitable subrogation claim is "premature" because the "right of subrogation does not accrue until the subrogee has made actual payment for the loss under its policy." (IFIC's Reply ¶¶ 12-13, Dkt. 98.) Accordingly, the question for the Court is whether the principle of equitable subrogation allows a surety on a bonded contract to assert the principal's contractual right to indemnification prior to being forced to make payment on behalf of the principal.

Subrogation allows a party who has "involuntarily discharged a debt on behalf of another who is primarily liable for that debt . . . to pursue any right or claim the debtor would have against a third party in relation to the debt." *Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 179 (Tex. App.—Fort Worth 2004, pet. denied). There is a longstanding rule that "subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated." *U.S. Fid. & Guar. Co. v. First Nat'l Bank in Dallas, Tex.*, 172 F.2d 258, 264 (5th Cir. 1949); *see also Lexington Ins. Co. v. Gray,* 775 S.W.2d 679, 683 (Tex. App.—Austin 1989, writ denied).

Here, BBM's Sureties do not claim to have made a payment or to have otherwise discharged a debt on behalf of BBM. BBM's Sureties do not point to any authority for the proposition that equitable subrogation allows a surety to assert the principal's contractual indemnification rights prior to the surety incurring a loss on behalf of the principal. In fact, all of the cases cited by BBM's Sureties entail scenarios where the surety had already been required to complete the bonded contract on behalf of the principal. *See Wilcon, Inc. v. Travelers Indem. Co.*, 654 F.2d 976, 987 (5th Cir. 1981) ("When [the surety] completed the . . . project upon the default of the [principal] and pursuant to its bond obligations, [the surety] became subrogated to all of the rights and remedies of the [principal] against defaulting subcontractors."); *Travelers*

*Indem. Co. v. Peacock Const. Co.*, 423 F.2d 1153, 1156 (5th Cir. 1970) ("[U]nder the most rudimentary principles the surety succeeds to its principal's right to payment upon completion of the contract."); *Gulf Liquids New River Project, LLC v. Gulsby Eng'g, Inc.*, 356 S.W.3d 54, 81 (Tex. App.-Houston [1st Dist.] 2011, no pet.) ("[A] surety who pays under a contract . . . , under principles of equitable subrogation, . . . may be able to assert its principal's contract, tort, or statutory claims.").

If at some point in the future BBM's Sureties incur a loss a result of being required to subsume BBM's contractual liabilities, then BBM's Sureties may be able to step into the shoes of BBM and assert its contractual indemnification rights. For now, however, the Court agrees with IFIC that BBM's Sureties' equitable subrogation claim is premature.

<u>Conclusion</u>

In sum, the Court concludes that the Indemnification Agreement is not subject to the Texas Anti-Indemnity Statute, which came into effect after the Prime Construction Contract was signed. Rather, the Indemnification Agreement is governed by the common law fair notice requirements, which governed indemnification agreements prior to the statute's enactment. Yet here, the fair notice requirements are inapplicable as IFIC had actual knowledge of the Indemnification Agreement. Even so, given the explicit and conspicuous character of the Indemnification Agreement, the fair notice requirements are clearly met. Thus, the Indemnification Agreement is enforceable. But IFIC is required to indemnify only BBM. BBM's Sureties have no claim to indemnification unless and until they can assert a viable claim for equitable subrogation.

The Court concludes that IFIC's Re-urged Motion to Dismiss Indemnity Claim of BBM and Its Sureties should be granted in part and denied in part. BBM's claims for indemnification from IFIC stand. However, BBM's Sureties' claims for indemnification from IFIC are dismissed.

**B.  IFIC's Re-urged Opposition to EJ Smith Construction Company's Motion for Leave to Amend**

EJ Smith previously moved for leave to file an amended complaint raising breach of contract and quantum meruit claims against IFIC. (EJ Smith's Mot. Leave File Am. Compl. & Am. Answer to Cross-Claim, Dkt. 59.) IFIC opposed the motion on the basis that EJ Smith's proposed amended complaint did not state a plausible claim upon which relief could be granted and thus the motion to amend was futile. (IFIC's Opp. to EJ Smith's Mot. Leave Amend; Dkt. 60.) Judge Smith granted the motion and allowed BBM to add the breach of contract and quantum meruit claims. (Order, Dkt. 61.) IFIC now moves the Court to reconsider. (IFIC's Re-Urged Opp. to EJ Smith's Mot. Leave Amend, Dkt. 93.)

The Court first addresses EJ Smith's proposed breach of contract claim and then turns to its proposed quantum meruit claim.

<u>EJ Smith's Proposed Breach of Contract Claim</u>

IFIC argues that EJ Smith's proposed breach of contract claim is insufficiently pled for three reasons: First, EJ Smith fails to identify which provision of the Completion Contract IFIC allegedly breached. Second, EJ Smith admits that it failed to perform. Third, EJ Smith bears the risk for unexpected contingencies that impede performance. The Court addresses each argument in turn.

First, IFIC argues that EJ Smith "fails to identify which provisions of the contract IFIC allegedly breached." (IFIC's Re-Urged Opp. to EJ Smith's Mot. Leave Amend ¶ 16, Dkt. 93.) However, EJ Smith's proposed Amended Complaint states: "The Completion Contract provided that IFIC would pay subcontractors for labor or services performed, materials delivered, or for costs associated with the storage of materials fabricated but not delivered, prior to the dates when EJ Smith assumed those subcontracts. Completion Contract ¶ 16(a)(i)." (Am. Compl. ¶ 26, Dkt. 62.) Paragraph 16(a)(i) of the Completion Contract states, in part:

> [T]he Completion Contractor shall not be liable for any amounts due . . . for labor or services performed, materials delivered, or for costs associated

15

> with the storage of materials fabricated but not delivered, prior to the date [that the Completion Contractor accepts the relevant preexisting subcontract]. From and after the Acceptance Date, the Completion Contractor shall have sole responsibility for payment of subcontractors . . . . Any retainage earned by subcontractors prior to the Acceptance Date shall be paid by Surety directly to the subcontractors at the time provided in the relevant subcontract, upon the prior written request of such subcontractor(s) and the Completion Contractor and upon determination by Surety that such retainage is then due and owing.

(Completion Contract ¶ 16(a)(i), Dkt. 72-6.) EJ Smith further alleges that "IFIC did not pay Vendigm's workers and some vendors for work performed prior to EJ Smith's commencement" as required by paragraph 16(a)(i) of the Completion Contract. (Am. Compl. ¶ 29, Dkt. 62.) As a consequence, EJ Smith alleges that "when it began performance under the Completion Contract in June 2013, [it] could not use Vendigm's workers and some vendors, because those workers and some vendors had left, since they had not been paid." (*Id.* ¶ 30.) Thus, the Court concludes that the Amended Complaint sufficiently alleges that IFIC failed to pay subcontractors for work performed prior to EJ Smith's acceptance of the terms of the Completion Contract and accordingly IFIC violated Paragraph 16(a)(i) of the Completion Contract.

Moreover, EJ Smith also asserts that IFIC violated the terms of the Completion Contract contained in Paragraphs 14 and 22. According to EJ Smith, Paragraph 14 "provide[s] that all billing and applications for payment by EJ Smith were to be submitted through IFIC" and Paragraph 22 provides that "EJ Smith had no authority to negotiate deductive change orders, change orders greater than $5,000, credits, backcharges, net deductions, issues or disputes with Balfour Beatty/McCarthy." (*Id.* ¶¶ 31-32.) EJ Smith then alleges that "[i]n late November 2014, IFIC denied a proposed change order by EJ Smith, without which EJ Smith could not continue to work," and "[a]ccordingly . . . EJ Smith terminated performance." (*Id.* ¶¶ 33-34.) Thus, the Court concludes that the Amended Complaint sufficiently alleges that IFIC, by denying a proposed change order, breached the terms of Paragraphs 14 and 22 of the Completion Contract.

The Court, therefore, finds that EJ Smith's proposed Amended Complaint names the provisions of the Completion Contract which EJ Smith is alleging IFIC breached with sufficient specificity and clarity to demonstrate that the proposed amendment is not futile.

Next, IFIC argues that "EJ Smith fails to allege that it performed or tendered performance." (IFIC's Re-Urged Opp. to EJ Smith's Mot. Leave Amend ¶ 15, Dkt. 93.) In the proposed Amended Complaint, EJ Smith states:

> EJ Smith was not able to perform pursuant to its detailed proposed means and methods, or in the alternative was delayed from providing same, due to IFIC and Balfour Beatty/McCarthy's interference (including failure to act), failure to coordinate the work, and failure to ensure proper and timely completion of precursor work.

(Am. Compl. ¶ 24, Dkt. 62.) IFIC contends that the paragraph constitutes an admission that EJ Smith failed to tender performance. Accordingly, IFIC contends that EJ Smith's breach of contract claim is barred under the longstanding rule that a party who has failed to tender performance may not bring a claim for breach of contract. *See e.g.*, *Kelly v. Webb*, 27 Tex. 368, 369 (1864) ("Neither party was entitled to enforce from the other a fulfillment of the contract without at the same time performing its stipulations on his part."). The Court is not persuaded by this argument for two reasons.

To begin with, a construction contractor who has breached may bring a claim for breach of contract as long as the contractor tendered substantial performance. In *Dobbins v. Redden*, the Texas Supreme Court held,

> It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach. This strict rule has been ameliorated in the law of building contracts by the doctrine of substantial performance, which allows a contract action by a builder who has breached, but nevertheless substantially completed, a building contract. However, when a breaching builder brings a contract action to recover damages for substantial performance, the builder bears the burden of proving he or she did substantially perform.

 *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (internal quotation marks and citations omitted). Here, EJ Smith acknowledges that its performance may have been deficient or

delayed, but nothing in the proposed Amended Complaint indicates that EJ Smith admits that it failed to tender substantial performance. Rather, there appears to be an issue of fact as to whether EJ Smith substantially performed.

Second, EJ Smith's failure to perform may have been excusable. EJ Smith is alleging that any delays or deficiencies in its performance were caused by prior breaches of the Completion Contract and other interference on the part of IFIC. A party's contractual nonperformance may be excused by a prior material breach on the part of the other party. *See, e.g.*, *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 689 (Tex. 1981) ("Default by one party excuses performance by the other party."). Moreover, even if a party's nonperformance was not excused, it may be able to recover damages for a prior breach by the other party. *See S. Steel Co. v. Consol. Eng'g Co.*, 677 S.W.2d 97, 103 (Tex. App.—San Antonio 1984), *rev'd on other grounds*, 699 S.W.2d 188 (Tex. 1985) (citing 6 A. *Corbin on Contracts*, § 1253, at 13; § 946 n.8 (1962)) (holding that when a party breaches subsequent to a partial breach on the part of another party, "each side is liable to the other").

Here, EJ Smith has plausibly alleged that it may be able to recover for IFIC's alleged breach. Determining whether EJ Smith's breach of contract claim is foreclosed by EJ Smith's own nonperformance requires first resolving numerous disputed issues of fact, which would be inappropriate at this early stage in the litigation. The Court, therefore finds, that EJ Smith's acknowledgment of partial nonperformance does not render the proposed Amended Complaint futile.

Third, IFIC contends that it promised to pay EJ Smith a lump sum price to complete the work on the parking garages and that it has paid EJ Smith more than the amount promised. (IFIC's Re-Urged Opp. to EJ Smith's Mot. Leave Amend ¶ 6, Dkt. 93.) IFIC asserts that EJ Smith is now seeking a higher contract price to account for an increase in the price of performance due to unforeseen difficulties. Texas adheres to rule that "where one agrees to do for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to

additional compensation, because unforeseen difficulties are encountered." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811 (Tex. 2012) (quoting *City of Dallas v. Shortall*, 131 Tex. 368, 114 S.W.2d 536, 540 (1938)). However, this rule does not apply here, where the unforeseen difficulty encountered is allegedly the breach of another party to the contract. EJ Smith is not alleging that the work ended up being more costly to complete than it originally estimated, but rather contends that it was unable to complete the work due to interference and lack of cooperation on the part of IFIC. If IFIC did in fact fail to perform its contractual responsibilities, then EJ Smith may have a right to damages pursuant to its claim for breach of contract, which is not the same as requesting additional compensation to account for unforeseen contingencies unrelated to the behavior of other parties. EJ Smith has plausibly alleged that IFIC did not live up to its end of the bargain. Accordingly, the rule that the contactor bears the risk that unforeseen difficulties will increase the cost of performance does not render EJ Smith's breach of contract claim against IFIC futile.

In sum, EJ Smith's proposed Amended Complaint alleges that IFIC breached multiple specific provisions in the Completion Contract and contends that this made it impossible for EJ Smith to perform. Whether IFIC breached, whether EJ Smith substantially performed, and if EJ Smith did not substantially perform, whether its nonperformance was excused are all disputed issues of fact. Thus, while EJ Smith may have a long way to go before proving its breach of contract claim against IFIC, the Court concludes that the claim is not futile.

<u>EJ Smith's Proposed Quantum Meruit Claim</u>

In addition to its breach of contract claim, EJ Smith's Amended Complaint also asserts a quantum meruit claim. IFIC in turn claims that the quantum meruit claim is inappropriate in cases where the parties have entered an express contract.

Generally, "[a] party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Stewart v. Sanmina Texas L.P.*, 156 S.W.3d 198, 215 (Tex. App.—Dallas 2005, no pet.); *see also Truly v. Austin*, 744 S.W.2d 934,

936 (Tex. 1988) ("As a general rule, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials."). However, "[t]here are instances when recovery in quantum meruit is permitted despite the existence of an express contract that covers the subject matter of the claim." *Truly*, 744 S.W.2d at 936. Principally, recovery under quantum meruit is allowed in construction cases when "a plaintiff has partially performed an express contract but, because of the *defendant's* breach, the plaintiff is prevented from completing the contract." *Id.* at 936.

Here, EJ Smith readily admits that the Completion Contract covers the services and materials furnished, as evidenced by the fact that EJ Smith's Amended Complaint also asserts a breach of contract claim for the same damages. However, EJ Smith's allegations fall neatly into the exception for instances where a plaintiff partially performs a construction contract but due the defendant's breach, the plaintiff is prevented from fully completing the contract. EJ Smith alleges that it partially performed the Completion Contract, but due to interference on the part of IFIC, it was unable to tender full performance. Accordingly, if EJ Smith proves these allegations, it would be able to recover under quantum meruit notwithstanding the fact that the goods and services in question were governed by an express contract.

IFIC also asserts that "an essential element of quantum meruit is the defendant receiving from the plaintiff, the benefit of a tangible product of value." (IFIC's Re-Urged Opp. to EJ Smith's Mot. Leave Amend ¶ 5, Dkt. 93.) However, the case cited does not say that conveyance of a tangible product of value is an essential element of a quantum meruit claim. Rather, the case explains why courts generally only allow recovery under quantum meruit when there is an express contract in the construction context. The court reasoned that "in the construction cases, the defendant retains a tangible product of value." *Truly*, 744 S.W.2d at 937. Accordingly, the Court is not persuaded that a plaintiff asserting a quantum meruit claim must plead the conveyance of a tangible product of value. Yet, even if there is such a requirement, the Court

concludes that EJ Smith sufficiently pleads that it provided IFIC a tangible product of value when it alleges that it provided materials and services to the construction project.

Finally, IFIC claims that "EJ Smith's quantum meruit claim . . . fails because it does not plead sufficient facts to show 'the reasonable value of labor or services performed and materials furnished.'" (IFIC's Re-Urged Opp. to EJ Smith's Mot. Leave Amend ¶ 23, Dkt. 93.) However, there is no requirement that a plaintiff provide a detailed calculation of damages in its complaint. To the extent that EJ Smith prevails on its quantum meruit claim, it will be required to prove the appropriate amount of damages with specificity. However, it need not do so at this early stage of the litigation.

Conclusion

The Court concludes that IFIC's Re-urged Opposition to EJ Smith Construction Company's Motion for Leave to Amend (Dkt. 93) should be denied. EJ Smith is granted leave to amend its complaint in order to add the proposed breach of contract and quantum meruit claims.

**C. IFIC Re-urged Opposition to Motion to Add a Fraud Claim of BBM**

BBM previously moved for leave to file an amended third-party complaint adding a fraudulent inducement claim against IFIC. (BBM's Opp. Mot. Leave File First Am. Third-Party Compl., Dkt. 64.) IFIC opposed the motion on the basis that BBM's proposed complaint did not state a viable fraudulent inducement claim and thus the motion to amend was futile. (IFIC's Opp. to BBM's Mot. Leave Amend, Dkt. 65.) Judge Smith granted the motion and allowed BBM to add the fraudulent inducement claim. (Order, Dkt. 70.) IFIC now moves the Court to reconsider. (IFIC's Re-Urged Opp. to Mot. Add Fraud Claim of BBM, Dkt. 92.).

Under Texas law, there are six elements to a claim for fraudulent inducement:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the

21

other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)).

 In its Amended Third-Party Complaint, BBM alleges that IFIC misrepresented that the remaining work on the Original Contract could be completed in forty-one days, while knowing that the work would in fact take significantly longer. BBM summarizes its allegations as follows:

> To induce BBM to execute its Takeover Agreement, IFIC represented and warranted that it could complete all remaining work within 41 working days, and by the dates provided in Exhibit D of the Takeover Agreement. IFIC committed fraud by entering into the Takeover Agreement with BBM, and then entering into the Completion Contract the next business day, giving EJ Smith 110 days to complete the remaining work.

(BBM' First Am. Third-Party Compl. ¶ 18, Dkt. 72.) Specifically, there are three statements contained in the Takeover Agreement and its appendices that BBM contends constitute fraudulent misrepresentations on the part of IFIC. First, Paragraph 5(a) of the Takeover Agreement states, "The original contract time consisted of 175 working days with approved extensions of 11 working days. There is a balance of 41 working days left in the contract." (Takeover Agreement ¶ 5(a); Dkt. 72-5.) Second, a document referred to by the parties as Exhibit D to the Takeover Agreement states that "[a]ccording to Balfour Beatty/McCarthy – JV, E.J. Smith needs to meet the following deadlines in order to avoid impacts to the Project's critical path" and then states that the "Clinic Garage" should be completed by August 1, 2013, the "Staff Garage" should be completed by August 31, 2013, and the "Hospital Garage" should be completed by September 30, 2013. (*Id.* at p. 53.) Finally, Paragraph 5(c) of the Takeover Agreement states, "Surety and BBM agree to execute work in accordance with the Contract Schedule and provided completion dates set forth as Exhibit D." (*Id.* 5(c).) The Court addresses each alleged misrepresentation in turn.

 First, BBM contends that IFIC drafted the Takeover Agreement and, accordingly, its decision to include language indicating "[t]here is a balance of 41 working days left in the

contract" constitutes a fraudulent misrepresentation. (*Id.* ¶ 5(a).)   In its proposed Amended Third-Party Complaint, BBM asserts that "IFIC represented and warranted that it could complete all remaining work within 41 working days." (BBM's Am. Third-Party Compl. ¶ 18, Dkt. 72.) However, the actual language in the agreement makes no representation with regard to IFIC's capabilities. Rather the language states the number of days remaining for the work to be completed as contemplated by the Original Contract. Nothing in the proposed Amended Third-Party Complaint indicates that this figure was an inaccurate representation of the amount of time remaining under the Original Contract.

Next, the Takeover Agreement and the proposed First Amended Third-Party Complaint both clearly state that the completion dates in Exhibit D were provided by BBM. (*See id.* ¶ 11; Takeover Agreement, at p. 53; Dkt. 72-5.) Accordingly, BBM's own allegations confirm that the content of Exhibit D is not a representation made by IFIC. Even if Exhibit D had been provided by IFIC, there is no indication in the Amended Complaint that the exhibit contains misrepresentations. Exhibit D states that the garages need to be completed by the dates contained therein "in order to avoid impacts to the Project's critical path." (Takeover Agreement, at p. 53; Dkt. 72-5.) There is no suggestion in the Amended Third-Party Complaint that the dates contained in Exhibit D misrepresented when impacts to the project's critical path could be expected.

Finally, the Court turns to BBM's contention that IFIC, by agreeing to Paragraph 5(c) of the Takeover Agreement, fraudulently misrepresented that it intended "to execute work in accordance with the Contract Schedule and provided completion dates set forth as Exhibit D." (Takeover Agreement ¶ 5(c), Dkt. 72-5.) This is the crux of BBM's argument: that IFIC's promise to timely complete the Takeover Agreement was hollow. Breach of contract alone is not fraud, however, a promise to perform a contract can constitute a fraudulent misrepresentation "if the promise was made with no intention of performing at the time it was made." *Formosa Plastics*

*Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). For an unfulfilled promise to perform a contract to rise to the level of fraud, it must be made "with the intent to deceive . . . at the time the representation was made." *Id.* Accordingly, BBM's proposed Amended Third-Party Complaint must plausibly allege that IFIC intentionally deceived BBM into believing that it intended to perform the Takeover Agreement, when in fact it had no intention of doing so.

In support of its contention that it was intentionally deceived by IFIC, BBM points to the terms of the Completion Contract, which it argues directly contradict the terms of the Takeover Agreement. The Completion Contract provided EJ Smith 110 days to complete the remaining work after receipt of a written "Notice to Proceed." (Completion Contract ¶ 7, Dkt. 72-6.) According to BBM, the fact that IFIC provided EJ Smith 110 days after having just a day prior purportedly promised to have the work completed in 41 days, indicates that IFIC had no intention of timely performing the Takeover Agreement.

However, BBM's claim relies on a disputed interpretation of the Takeover Agreement. The parties disagree as to when IFIC was required to complete the remaining work under the terms of the Takeover Agreement. Paragraph 5(c) of the agreement indicates that IFIC agreed to complete the work in "accordance with the Contract Schedule and provided completion dates set forth as Exhibit D."  (Takeover Agreement ¶ 5(c); Dkt. 72-5.) By one reading, the Takeover Agreement does not require IFIC to complete the work by any date certain. Rather, the agreement sets certain target dates and contemplates possible consequences of missing those target dates, including the possibility of triggering liquidated damages. By another reading, IFIC is bound to complete the work in forty-one days. To reach this conclusion, paragraph 5(c)'s reference to "the Contract Schedule" must be read as a reference to the schedule dictated by the Original Contract. According to Paragraph 5(a), only forty-one days remained under the terms of the Original Contract. So, one reading of Paragraph 5(c) is that it obligates IFIC to complete the work within forty-one days. By a final reading, IFIC is bound to complete the work

by the dates contained in Exhibit D. The schedule in Exhibit D allows IFIC 103 days to complete the remaining work, potentially as many as 113, depending on whether the days for excusable delays, contemplated in the Original Contract, carryover to the Takeover Agreement.

In light of the ambiguity within the Takeover Agreement and the uncertainty as to when IFIC was required to complete the work, it is not plausible that IFIC intentionally deceived BBM. In fact, BBM acknowledges that it calculated the completion dates contained in Exhibit D, prepared the exhibit, and included it in the Takeover Agreement. Thus, even if the Court accepts the reading of the Takeover Agreement which requires IFIC to complete the garages in forty-one days, it is nonetheless clear from the face of BBM's allegations that BBM was aware that completion of the garages would likely take longer. The allegations in the proposed Amended Third-Party Complaint may support an inference that IFIC misunderstood its contractual obligations or even that IFIC later made a business decision to breach the contract in favor of paying liquidated damages. However, BBM's allegations do not provide credible support for the claim that IFIC had no intention of performing at the time it entered into the Takeover Agreement.   The only specific support BBM provides for this contention is the purported contradiction between the Completion Contract and the Takeover Agreement. However, the Court concludes that the terms of the Completion Contract are wholly consistent with a good faith intention on the part of IFIC to timely perform the Takeover Agreement. Accordingly, BBM's proposed fraudulent inducement claim is futile as the facts alleged therein are insufficient to suggest that the claim is not only "conceivable" but also "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## Conclusion

Accordingly, the Court concludes that IFIC's Re-urged Opposition to Motion to Add a Fraud Claim of BBM (Dkt. 92) should be denied and that BBM's Opposed Motion for Leave to File a First Amended Third-Party Complaint Against International Fidelity Insurance Company (Dkt. 64) should be granted in part and denied in part. BBM is granted leave to file its proposed

amended third party complaint as to all portions of the complaint except for the fraud claim contained in Count III, paragraphs fifty through fifty eight.

### D. IFIC's Motion for Leave to File First Amended Counterclaim

IFIC moves for leave to file an amended counterclaim, asserting a fraud claim against BBM. (IFIC's Mot. Leave. File First. Am. Countercl., Dkt. 79.)  The Court concludes that IFIC's motion should be denied because IFIC fails to state a claim for fraud upon which relief could be granted, and thus, IFIC's proposed amendment is futile.

Under Texas law, there are six elements to a claim for fraud:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners,* 341 S.W.3d at 337 (quoting *Aquaplex,* 297 S.W.3d at 774).

Here, IFIC asserts that BBM made numerous fraudulent misrepresentations related to the Takeover Agreement between IFIC and BBM. The alleged misrepresentations fall into three categories: (1) statements about how much time IFIC had to complete the construction work under the terms of the Takeover Agreement; (2) statements about EJ Smith's capabilities and whether EJ Smith was capable of completing the remaining construction work; (3) statements about whether BBM intended to perform the Takeover Agreement. The Court will address each category of alleged misrepresentation in turn.

First, IFIC alleges that BBM fraudulently misrepresented the amount of time that IFIC had to complete the remaining work under the Takeover Agreement. For example, IFIC alleges that "BBM made a material misrepresentation . . . by representing . . . that the remaining work was to be and could be completed by the dates established in Exhibit D of the Takeover Agreement." (IFIC's First. Am. Countercl. Against Third-Party Plf.'s ¶ 63, Dkt. 79-1.) Moreover, IFIC asserts that "[t]o the extent BBM now claims that the remaining work was to be completed

in 41 working days, BBM's material misrepresentation of preexisting fact that the remaining work was to be completed by the dates established in Exhibit D of the Takeover Agreement was false." (*Id.* ¶ 65.)

Here, IFIC is attempting to convert a conventional contract dispute into a claim for fraud. Clearly, the parties disagree as to when IFIC was required to complete the remaining work under the Takeover Agreement. However, IFIC's allegation that BBM misrepresented the amount of time remaining on the contract fails support a claim for fraud for two reasons. First, IFIC does not allege that the representation was false. To the contrary, IFIC agrees that remaining work was to be completed consistent with the dates in Exhibit D of the Takeover Agreement. While BBM may have made representation about the Takeover Agreement that are inconsistent with its current legal positions, to assert a viable fraud claim IFIC needs to show that the allegations are actually false. It has not done so here. Second, IFIC has not alleged that "when the representation was made, [BBM] knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion." *Italian Cowboy Partners*, 341 S.W.3d at 337. IFIC's allegations, viewed in the light most favorable to IFIC, at best support a conclusion the parties had a substantial misunderstanding as to by when the Takeover Agreement required the remaining work to be completed. IFIC provides no credible factual support for the proposition that BBM *knowingly* or *recklessly* made misrepresentations about the relevant deadlines in the Takeover Agreement.

Next, IFIC alleges that BBM fraudulently misrepresented the capabilities of EJ Smith. For example, IFIC asserts that "BBM made . . . material misrepresentations . . . that EJ Smith was competent to perform the remaining work . . . [and] that BBM was confident in EJ Smith's abilities to complete the scope of work of Vendigm for the agreed lump sum price, in the agreed time, including by the dates provided by BBM." (IFIC's First. Am. Countercl. Against Third-Party Plf.'s ¶ 64, Dkt. 79-1.)

Again, IFIC fails to credibly allege all of the necessary elements of a fraud claim. As previously discussed, to prevail, IFIC's Amended Counterclaim would need to contain credible factual support for the proposition that BBM knowingly or recklessly made misrepresentations with regard to EJ Smith's capabilities. While, IFIC makes the conclusory assertion that "BBM either intentionally misrepresented that EJ Smith was competent to timely and properly perform the work . . . or its representations were made recklessly," (IFIC's First. Am. Countercl. Against Third-Party Plf.'s ¶ 69, Dkt. 79-1.) IFIC provides no further factual allegations in support of this claim. Similarly, to prevail, IFIC's Amended Counterclaim would need to contain credible factual support for the proposition that IFIC acted in reliance on BBM's assessment of EJ Smith's capabilities. Again, IFIC makes a conclusory assertion that "IFIC actually and justifiably relied on BBM's assertions" (*id.* at 73) but provides no further factual allegations in support of the proposition. IFIC, as per its own representations, is a sophisticated actor that likely would have made an independent assessment of EJ Smith's capabilities before hiring it to complete the remaining work on a complex construction project. Thus, absent further factual support, the Court find that IFIC's allegation that BBM knowingly or recklessly made misrepresentations about EJ Smith's capabilities is conclusory and implausible.

Finally, IFIC alleges that BBM made numerous misrepresentations about its intention to perform its responsibilities under the Takeover Agreement. Specifically, IFIC asserts that "BBM . . . made material misrepresentations . . . that BBM would make progress payments to IFIC and not unreasonably withhold payments to IFIC." (*Id.* ¶ 64.)

Here, IFIC is alleging that BBM falsely promised to perform the Takeover Agreement. In order for IFIC to demonstrate that BBM's promise of performance was fraudulent, IFIC must demonstrate (a) that BBM intentionally deceived IFIC, and (b) that BBM had no intention of performing. *See Formosa Plastics*, 960 S.W.2d at 48.  IFIC's only allegations directly contradict the proposition that BBM had no intention of performing. In fact, IFIC has conceded that "between the dates of approximately August 28, 2013 and January 7, 2014, BBM remitted

payments to IFIC totaling $854,566.93" (IFIC's Answer, Countercl. And Crosscl. ¶ 57, Dkt. 33), which was more than a month after EJ Smith alleges that it last provided materials and labor for the project. Accordingly, there is clearly a dispute between the parties as to whether BBM was right to withhold payment from IFIC after January 7, 2014. However, this is a dispute about whether BBM adhered to the terms of a contract not about whether BBM committed fraud. Thus, the Court finds that IFIC's allegations that BBM intentionally deceived it into believing it would make payments under the Takeover Agreement when in fact it had no intention of doing so, is rendered implausible by the IFIC's own admission that for many months BBM did make the required payments.

In sum, the Court concludes that the allegations undergirding IFIC's fraud claim are conclusory and implausible. To the contrary, the Court agrees with IFIC earlier representation that "this is a breach of contract lawsuit related to a large project . . . involving sophisticated parties; involving parties who reduced their agreements to writing; involving disputes about scheduling, coordination, and impacts. *What this case is not is a fraud case*." (IFIC's Re-Urged Opp. to BBM's Mot. Add Fraud Claim ¶ 1, Dkt. 92.)

<u>Conclusion</u>

The Court concludes that IFIC's Motion for Leave to File First Amended Counterclaim (Dkt. 79) should be denied.

**E. EJ Smith's Motion for Leave to Designate Potentially Responsible Third Parties**

EJ Smith moves for leave to designate Tenn-Tex International Concrete Company ("Tenn-Tex"), Fraire's Rebar, Inc. ("Fraire's Rebar"), and The Vertex Companies, Inc. ("Vertex") as potentially responsible third parties, pursuant to Chapter 33 of the Texas Civil Practices and Remedies Code. (EJ Smith's Mot. Leave Designate Resp. Third Parties, Dkt. 74.) The Court concludes that EJ Smith's motion should be dismissed because the Texas Proportionate Responsibility Statute does not apply to contract claims.

Section 33.004 of the Texas Civil Practices and Remedies Code provide that "[t]his chapter applies to: (1) any cause of action based on tort . . . or (2) any action brought under the Deceptive Trade Practices-Consumer Protection Act." Tex. Civ. Prac. & Rem. Code § 33.002(a). Here, EJ Smith asserts a Miller Act claim against BBM and a breach of contract claim against IFIC, both of which fall outside the scope of the Texas Proportionate Responsibility Statute. *See Viceroy Petroleum, L.P. v. Tadlock Pipe & Rentals, Inc.*, No. SA-14-CV-00006-DAE, 2014 WL 5488422, at *3 (W.D. Tex. Oct. 29, 2014) ("Plaintiff next argues that § 33.004 is part of the Texas statutory scheme for determining proportionate responsibility in tort actions and, thus, cannot apply to Plaintiff's contract claims. The Court agrees."); *Nels Cary, Inc. v. Day*, No. 3:07-CV-0832-D, 2008 WL 631242, at *1 (N.D. Tex. Feb. 29, 2008) ("In Texas, when a defendant is sued in tort or under the DTPA, his ultimate liability is reduced by a percentage of responsibility attributed to a 'responsible third party.' . . . This applies exclusively to actions based in tort or brought under the DTPA, so a defendant cannot designate a responsible third party with respect to a *contract* claim against him.").

EJ Smith argues that "BBM/BBM Sureties and IFIC *have* alleged that EJ Smith is contributorily negligent" and accordingly "the arguments . . . about EJ Smith's status as a breach of contract plaintiff and situations where plaintiff cannot rely on the proportional responsibility statute are irrelevant and beside the point." (EJ Smith's Reply, Dkt. 85.) Given the Texas Proportionate Responsibility Statute's limited scope, it may be that BBM and IFIC have inappropriately asserted contributory negligence defenses. If so, EJ Smith should move to dismiss these defenses.  However, Chapter 33 of the Texas Civil Practices and Remedies Code clearly does not apply to the claims presently asserted by EJ Smith.

At the hearing on this motion, EJ Smith acknowledged that a party may not designate potentially responsible third parties with regard to a claim for breach of contract. However, EJ Smith claimed that it filed this motion in order to preserve its right to designate potentially responsible third parties in light of the trial setting in place at the time. *See* Tex. Civ. Prac. &

Rem. Code § 33.004(a) ("[A] motion for leave to designate that person as a responsible third party . . . must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date.") However, the Court has vacated the original trial setting and, accordingly, EJ Smith does not currently face a deadline to move the Court to designate responsible third parties. If EJ Smith later amends its pleadings to include a claim to which the Texas Proportionate Responsibility Statute applies, it may then have a right to designate responsible third parties. But the Court concludes that there is no statutory basis to designate potentially responsible third parties at this time.

### IV. Conclusion

For the foregoing reasons,

IFIC's Re-urged Motion to Dismiss Indemnity Claim of BBM and Sureties (Dkt. 91) is hereby **GRANTED IN PART AND DENIED IN PART.** BBM's Sureties' claims for indemnification from IFIC are hereby **DISMISSED.** All other relief sought in IFIC's Motion to Dismiss Claims of BBM and Sureties (Dkt. 32) is hereby **DENIED.**

IFIC's Re-urged Opposition to EJ Smith's Motion for Leave to Amend (Dkt. 93) is hereby **DENIED.** EJ Smith's Motion for Leave to File (1) Amended Complaint and (2) Amended Answer to Cross-Claim is hereby **GRANTED.**

IFIC's Re-urged Opposition to Motion to Add a Fraud Claim of BBM (Dkt. 92) is hereby **GRANTED.** BBM's Opposed Motion for Leave to File a First Amended Third-Party Complaint Against IFIC is hereby **GRANTED IN PART AND DENIED IN PART.** BBM is granted leave to file its proposed amended third party complaint as to all portions of the complaint except for the fraud claim contained in Count III, paragraphs fifty through fifty eight.

IFIC's Motion for Leave to File an Amended Counterclaim (Dkt. 79) is hereby **DENIED.**

EJ Smith's Motion for Leave Designate Potentially Responsible Third Parties (Dkt. 74.) is hereby **DISMISSED WITHOUT PREJUDICE.**

**SIGNED** on March 10, 2016.

_____
ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE